## THE RAVEN.[1]

*(District Court, D. Massachusetts. April 19, 1886.)*

SALVAGE—TOWAGE—PRIOR CONTRACT—ASSISTANCE RENDERED AT THE REQUEST OF SALVOR—COMPENSATION—COSTS.

The brig R., while in distress, was assisted by a tug, the latter vessel agreeing, for a fixed price, to take the former to her destination, and to furnish a second tug if necessary. While engaged in towing the R. the tug's hawser parted, and a signal for assistance was made by the tug to a second tug, then lying in the vicinity. The dismantled condition of the R., and the presence of dangers of navigation, increased the necessity for assistance, but there was ample time and opportunity for the first tug to have picked the R. up again without the help of the second. *Held*, that the service rendered by the second tug at the request of the first was that of ordinary towage, and that the proper compensation was the usual towage charge allowed by the custom of the port to a tug when called upon to-assist another in towing. *Held, also*, that the payment of a sufficient sum having been offered (and declined) the claimants are entitled to costs.

Libel for Salvage by the owner, master, and crew of the steam-tug William H. Clark against the brig Raven.

*C. T. Russell*, for libelant.

*F. Cunningham* and *E. N. Hill*, for claimants.

NELSON, J. As the brig Raven, of Machias, Maine, from Jamaica with a cargo of logwood, was approaching Boston harbor on the morning of January 16, 1886, in a violent gale of wind from the N. E., with thick snow, she was obliged to come to anchor two miles east of Point Allerton. Finding that the brig was dragging her anchors, her master ordered the topmasts and yards to be cut away to keep her from drifting on shore. At 1:30 P. M., while lying in this position, the gale having broken, and the wind shifted to S. W., she was taken in tow by the tug John Markee, under a contract by which the tug undertook to tow her to Boston, dock her, furnish the services of another tug, if found necessary, and afterwards to return and get her anchors and chains, which, owing to the heavy sea, and the disabled condition of her windlass, she was obliged to slip; for which service the tug was to receive $200. Before reaching Boston Light the hawser parted twice, but was made fast again each time without difficulty. When between Boston Light and Nash's Rocks the hawser parted a third time, and the master of the John Markee signaled to the William H. Clark, then lying in the vicinity looking for employment, for assistance. In answer to the signal the William H. Clark steamed up to the brig, threw her a heaving line, and a hawser was hauled on board the brig and made fast. The hawser of the John Markee was then again hauled on board, and made fast to the brig, and the two tugs together towed her to her dock in Boston. For the assistance thus rendered the William H. Clark now claims salvage.

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

I am unable to perceive in this anything more than ordinary towage service, rendered at the request of the John Markee. The brig being without available sails or anchors, with the wreckage of her spars dragging at her side, would certainly have been in imminent danger of drifting on the rocks upon Light-house Island, if she had been alone, and had not already secured all the assistance necessary for her safety. It is true the hawser of the John Markee had proved inadequate to tow her in the rough sea against a strong ebb-tide. But it was of sufficient strength to hold her stationary, or to tow her with the current, or across it in either direction, to a position of safety. The weather had cleared, and the wind, though strong, had ceased to be in the least degree dangerous. The tug-boat York, the consort of the John Markee, was coming down the harbor to help her. The hawser of the John Markee parted at the hawse-hole, and was still of sufficient length for use. The only disputed fact in the case was with reference to the distance of the brig from the rocks at the time the William H. Clark took hold. Of course the estimates of the witnesses varied widely, some of them placing her on the northerly side of the channel, close to Light-house Island, and others on the opposite side, near Nash's Rocks. The keeper of the light-house, a disinterested and intelligent witness, who saw the occurrence, testified that the William H. Clark took hold about the middle of the channel. This would make the distance on the oblique course of the brig's drift considerably more than an eighth of a mile. I take his estimate as the correct one. This would give the John Markee ample time to come to the rescue. It also appeared that the master of the William H. Clark claimed at the time only the usual towage charge allowed by the custom of the port to a tug when called upon to assist another in towing a vessel. It should also be noted that it is not pretended that the William H. Clark was exposed to any extraordinary peril, or to any risk but such as was incident to her every-day employment. My conclusion is that the services of the William H. Clark were towage, and not salvage, services.

It appeared that the master of the Raven offered to pay $80 for the services rendered, which was declined by the agent of the William H. Clark. The compensation offered was sufficient, and should have been accepted. A decree may be entered for that amount for the benefit of the owners of the tug, but the claimants of the brig are to recover their costs. Ordered accordingly.